## W. D. BREAZEALE *v.* Jo Betty BREAZEALE

5-5104                                          451 S. W. 2d 865

Opinion delivered April 6, 1970

*Joe Holmes,* for appellant.

*Reinberger, Eilbott, Smith & Staten,* for appellee.

Lyle Brown, Justice. Appellee Jo Betty Breazeale was awarded a divorce, custody of three teen-age children, and child support. W. D. Breazeale appeals only from that part of the decree granting the divorce, alleging insufficiency of the evidence.

It was shown that on two previous occasions the parties became estranged but those difficulties were compromised. It was admitted that one of those incidents involved appellant's relation with another woman. The present divorce action, filed in January 1969, was based on alleged indignities. The proof in that connection covered two principal items of alleged activities by the husband, namely, (1) false accusations of infidelity directed at the wife, and (2) embarrassment caused by his passing numerous bad checks. We find the proof to be sufficient to sustain the chancellor.

Appellee testified that she was constantly accused of dating other men; that appellant endeavored to see

that some member of the family always accompanied appellee when she went to town; and that he called her many immoral names, such as a cheap prostitute. Some of the name-calling was alleged to have been in the hearing of the children. A year or more prior to the trial, appellant was said to have developed the habit of writing bad checks to cover debts, so appellee claimed, that were incurred by appellant over and beyond the necessary living expenses. (It is clear from the record that numerous such checks were outstanding at the time of trial.) In his efforts to appease pressing creditors, the appellee wife testified that appellant sold her engagement and wedding rings, and mortgaged the furniture, as well as the equipment in her beauty shop, all without her knowledge. She said she experienced constant embarrassment from meeting friends and business men who held checks on her husband. She allegedly experienced a feeling of disgrace because the sheriff had been to the house many times with reference to the checks, in fact had there arrested her husband two or three times. On one occasion she said he was arrested on the street in the presence of her and the children.

Appellant offered only his own testimony. He candidly admitted making accusations of infidelity. He testified that in retrospect he realized his charges were wholly unwarranted. With respect to the checks he admitted their circulation but contended that he considered them as notes, telling the recipients he did not have the money. He admitted that at the time of trial he had a total of some twenty-three creditors, mostly individuals, to whom he owed a total of more than $8,000. He contended that he was working at manual labor on the railroad, that his lawyer had a "stack of checks" and was apportioning the proceeds of Breazeale's check monthly to his creditors. He explained that a substantial part of the "loans" went to support his family at times when he was in a financial strain. He avowed his love for his wife and children and asked that the divorce not be granted because he was hopeful of reconciliation.

Appellant argues that the giving of the checks could form no ground for the granting of a divorce. (Appellant, in his argument here, refers to "post-dated checks" but the record does not reflect the use of the term.) The chancellor was warranted in finding from the evidence that the continuous giving of a substantial number of bad checks was wrong. In fact appellant's own counsel advised him that he made a mistake in giving the checks. The chancellor also believed, and correctly from the evidence. that appellant conducted himself with a conscious indifference to the resulting embarrassment of his wife and children.

Secondly, appellant challenges the sufficiency of the corroborating evidence. Witness Jean Hicks appeared to be on good terms with both parties until shortly before the final separation. Mrs. Hicks testified that on two different occasions she heard appellant accuse appellee of infidelity; and that on another occasion she heard him call appellee an immoral name and within the hearing of the children. The witness recounted one of the incidents wherein the husband was jailed and Mrs. Breazeale returned home by herself. Finally, the witness corroborated Mrs. Breazeale in the latter's contention that the family was not the recipient of most of the proceeds of the bad checks. Mrs. Hicks testified that on several occasions she helped Mrs. Breazeale pay current bills. It is apparent to us that this divorce action was not a collusive contest, so the required corroboration can be "comparatively slight and yet be sufficient." *Walker* v. *Walker,* 248 Ark. 93, 450 S. W. 2d 1.

Affirmed.

HARRIS, C. J., not participating.